OPINION
In a "Notice of Opportunity for Hearing" ("Notice of Opportunity") dated October 9, 1998, appellee, Ohio State Board of Pharmacy ("board") advised appellant, Linden Medical Pharmacy, Inc.[1] ("Linden"), a licensed "terminal distributor of dangerous drugs,"[2] that it intended to revoke its license based upon the following allegations:[3]
 (2) Linden Medical Pharmacy did, from August 18, 1995, through October 15, 1996, knowingly sell controlled substances in amounts exceeding fifty times the bulk amount when the conduct was not in accordance with Chapters 3719., 4729., and 4731. of the Ohio Revised Code, to wit: the pharmacy sold the following controlled substances without prescriptions and not for a legitimate medical purpose:
Drug Schedule Shortage % of Stock
 APAP with Codeine #4 III 14,124 49% Diazepam 10mg IV 48,900 38.5% Adipex-P IV 6,919 12.0% Phentermine HCl 37.5 mg IV 10,702 14.9%
 Such conduct is in violation of Section 2925.03 of the Ohio Revised Code, and if proven constitutes violating a provision of Chapter 2925. of the Ohio Revised Code within the meaning of Section 4729.57 of the Ohio Revised Code.
 (3) Linden Medical Pharmacy did, from August 18, 1995, through October 15, 1996, knowingly sell controlled substances in an amount exceeding five times the bulk amount but not exceeding fifty times the bulk amount when the conduct was not in accordance with Chapters 3719., 4729., and 4731. of the Ohio Revised Code, to wit: the pharmacy sold the following controlled substances without prescriptions and not for a legitimate medical purpose:
 Drug Schedule Shortage % of Stock Talwin NX IV 2,715 6.7%
 Such conduct is in violation of Section 2925.03 of the Ohio Revised Code, and if proven constitutes violating a provision of Chapter 2925. of the Ohio Revised Code within the meaning of Section 4729.57 of the Ohio Revised Code.
 (4) Linden Medical Pharmacy did, from August 18, 1995, through October 15, 1996, fail to keep a record of all controlled substances received or dispensed by the pharmacy which contained the name and place of residence of either person to whom controlled substances were dispensed, to wit: the pharmacy and/or its employees sold the controlled substances listed in paragraphs (2) and (3) above but kept no records of the sales. Such conduct is in violation of Section 3719.07 of the Ohio Revised Code and Rule 4729-9-14 of the Ohio Administrative Code, and if proven constitutes violating a provision of Chapter 3719. of the Ohio Revised Code and/or violating a rule of the Board within the meaning of Section 4729.57 of the Ohio Revised Code.
 (5) Linden Medical Pharmacy did, from August 18, 1995, through October 15, 1996, fail to provide effective and approved controls and procedures to guard against theft and diversion of dangerous drugs, to wit: the pharmacy had inadequate supervision and control over the controlled substances so as to prevent, deter, or detect the diversion of the controlled substances noted in paragraphs (2) and (3) above. Such conduct is in violation of Rule 4729-9-05 of the Ohio Administrative Code, and if proven constitutes violating a rule of the Board within the meaning of Section 4729.57 of the Ohio Revised Code.
 (6) Linden Medical Pharmacy did, on or about October 15, 1996, and dates prior thereto, fail to maintain the minimum standards for a pharmacy, to wit: the pharmacy did not possess a copy of current federal and state laws, regulations, and rules governing the legal distribution of drugs in Ohio. Such conduct is in violation of Rule 4729-9-02 of the Ohio Administrative Code, and if proven constitutes violating a rule of the Board within the meaning of Section 4729.57 of the Ohio Revised Code.
Linden requested a hearing on the charges pursuant to R.C. Chapter 119. A hearing was held before the board on May 5, 1999. At the hearing, Christopher K. Reed, a board compliance agent, testified that on October 15, 1996, he conducted an audit of selected controlled substances for the time period August 18, 1995 through October 15, 1996. The audit was conducted in response to a report received by the board from the Columbus Division of Police, Narcotics Bureau, regarding an alleged theft of controlled substances from Linden.
Reed testified that the audit revealed a shortage of over 80,000 doses of controlled substances. Pursuant to his investigation, Reed interviewed several persons, including "responsible pharmacist" Jerome Broering,[4] full-time nonregistered pharmacy technicians, Judith Pendleton and Diane Swarm, part-time nonregistered pharmacy technician, Michael Kaufman, and registered pharmacist and owner of Linden, Larry Kaufman. According to Reed, all denied knowledge of any thefts or unauthorized entries during the audit period. Reed further testified that neither the board nor the police department ever determined precisely what happened to the missing drugs; however, since no break-ins were reported during the audit period, and no evidence suggested that someone other than one of Linden's employees removed the drugs, the resulting conclusion was that the drugs must have been stolen by one of the employees. In addition to the drug shortage, Reed's audit revealed that Linden did not possess a current copy of the federal and state drug laws, regulations, and rules governing the legal distribution of drugs in Ohio.
Broering testified that he has practiced pharmacy since 1972. He was hired as a part-time pharmacist at Linden in August 1995 and assumed the duties of responsible pharmacist about three weeks after he was hired. During the audit period, Broering worked approximately twenty-four hours per week. Broering admitted that he slept some of the time he was on duty due to fatigue from running a home-based business. He further testified that during his tenure at Linden, Pendleton placed the majority of the drug orders, supervised the day-to-day operations, and occasionally worked in the pharmacy without a pharmacist present. According to Broering, Larry Kaufman visited the pharmacy only about once a month.
Broering testified that throughout the audit period, Linden employed college students to prepackage controlled substances and part-time pharmacists to cover the pharmacy hours when he was not on duty. During the relevant time period, only Broering and Larry Kaufman had keys to the pharmacy. A third key was kept in a signed, sealed envelope for use by the relief pharmacists.
Broering testified that he was unaware of the drug shortages until contacted by Reed after the audit was completed. Sometime after Linden received the "Notice of Opportunity," Pendleton expressed her suspicion to Broering that one of the packers may have stolen the missing drugs.
When asked to describe the duties of a "responsible pharmacist," Broering responded:
 The responsible pharmacist, again, I guess, the bottom line is the buck stops there as far as any of the legal, liable, inventory control, making sure that everything in the pharmacy gets run correctly. And if there is a problem in any way, shape or form, it is the responsible pharmacist, bottom line, who's responsible. I mean, that's where the buck stops so whether it's loss of drugs or making sure things get done accurately or all the pharmacy operations basically, the responsible pharmacist should be responsible for it. (Tr. of board hearing 5/5/00, at 67.)
Pendleton testified that she has been employed at Linden for eighteen years as a pharmacy technician/office manager. Pendleton stated that she was unaware of any break-ins or unauthorized entrances at Linden during the audit period. She further testified that Linden had never experienced a drug shortage prior to Broering becoming responsible pharmacist. According to Pendleton, Broering spent as much as seven hours a day sleeping while on duty at Linden. During those periods, she or Swarm filled the prescriptions and counseled patients. Pendleton stated that she did not tell Larry Kaufman about Broering's sleeping habits because she liked Broering. She further stated that when she discovered the drug shortages, she did not inform Larry Kaufman because he had just suffered a heart attack and she did not want to upset him. Although she suspected who the perpetrator might be, she did not tell Broering and took it upon herself to have the suspect dismissed from employment at Linden. After the suspect was dismissed, the thefts stopped; consequently, Pendleton felt no need to inform either Broering or Larry Kaufman.
Diane Swarm testified that she has worked at Linden for twenty-four years. In April 1996, Pendleton mentioned the drug shortages to her. Both women suspected one of the packers, but decided not to inform either Larry Kaufman or Broering. Swarm corroborated Pendleton's testimony that Broering slept on the job, but denied that he slept more than four hours a day.
Based upon this evidence, the board issued an order revoking Linden's terminal distributor license. In its findings of fact, the board substantially repeated the above-quoted allegations contained in the Notice of Opportunity.
Pursuant to R.C. 119.12, Linden timely appealed the board's order to the Franklin County Court of Common Pleas, and requested a stay of the board's order. The court stayed the order of the board pending the final disposition of Linden's appeal. After a review of the record, the court, on May 19, 2000, filed a decision affirming in part and reversing in part the board's order. The court concluded that the board's findings of fact two and three, i.e., that Linden knowingly sold controlled substances, were not supported by reliable, probative, and substantial evidence. The court, however, found reliable, probative and substantial evidence to support the board's findings of fact four, five and six. The court remanded the case to the board with instructions to impose a penalty with regard to the violations not involving the illegal sale of controlled substances.
On May 25, 2000, Linden filed a motion for clarification and a motion for reconsideration of the court's May 19, 2000 decision. By decision filed June 8, 2000, the court clarified its decision and overruled the motion for reconsideration. Linden has timely appealed the common pleas court's judgment, advancing the following five assignments of error:
 [1]. The trial court erred by failing to reverse the Order of Appellee Ohio State Board of Pharmacy ("Board") issued June 17, 1999 ("Order") because the Board lacked reliable, substantial, and probative evidence to support its findings.
 [2]. In partially affirming the Board's Order, the trial court erroneously relied upon: (a) allegations which were not charged against Linden in the Notice of Opportunity for Hearing issued by the Board on or about October 9, 1998 ("Notice of Opportunity"); and (b) findings of fact and conclusions of law which were not relied upon by the Board in adjudicating the case and issuing the Order.
 [3]. The trial court erred by partially affirming the Board's Order on grounds not charged in the Notice of Opportunity, thereby depriving Linden of due process of law guaranteed by the Constitutions of Ohio and the United States of America.
 [4]. In partially affirming the Board's Order, the trial court erred by failing to consider the standard of care applicable to the pharmacy owner and holder of the pharmacy's terminal distributor license.
 [5]. The trial court erred by refusing to reverse the Order in its entirely because: (1) the penalty imposed by the Board through the Order is inconsistent with penalties imposed by the Board in other factually similar cases. Therefore, the Order involves discriminatory and disparate treatment depriving Linden of equal treatment and due course of law guaranteed by the Constitutions of Ohio and the United States of America; (2) the Board imposed its penalty against Linden's terminal distributor license based upon an unlawful theory of strict and/or vicarious liability, and without due regard for the more lenient penalty imposed by the Board upon Linden's responsible pharmacist in a parallel proceeding involving the same factual circumstances and charges; and (3) the Order is not supported by reliable, probative, and substantial evidence in the record, and is not in accordance with the law.
Pursuant to R.C. 119.12, a common pleas court may affirm an administrative agency's determination if it is "supported by reliable, probative, and substantial evidence and is in accordance with law." "This standard calls for two inquiries; a hybrid factual/legal inquiry, in which the agency's findings of fact are presumed correct, and a purely legal inquiry, in which questions of law are reviewed de novo." Moran v. Ohio Dept. of Commerce, Division of Real Estate (1996),109 Ohio App.3d 494, 497. An appellate court's review, however, is more limited than that of the common pleas court. An appellate court is to determine only whether the common pleas court abused its discretion. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. Moran, supra. Absent an abuse of discretion on the part of the common pleas court, this court may not substitute its judgment for that of the pharmacy board or common pleas court. Pons, supra. Instead, this court must affirm the common pleas court's judgment. Id. Moreover, "[w]hen reviewing a [pharmacy] Board's order, courts must accord due deference to the Board's interpretation of the technical and ethical requirements of its profession." Id. at syllabus. On purely legal questions, however, this court's standard of review is de novo. Moran, supra.
While Linden sets forth five separate assignments of error, its contentions within those assignments of error may be distilled to three distinct issues, which we will address in turn.
Linden first challenges the common pleas court's decision affirming the board's order with regard to the alleged record-keeping violation, i.e., finding of fact four. As noted previously, paragraph four of the Notice of Opportunity alleges that Linden:
 * * * fail[ed] to keep a record of all controlled substances received or dispensed by the pharmacy * * * to wit: the pharmacy and/or its employees sold the controlled substances listed in paragraphs (2) and (3) above but kept no records of the sales * * * in violation of Section 3719.07 of the Ohio Revised Code and Rule 4729-9-14 of the Ohio Administrative Code. * * *
According to the board's own language, Linden was charged with violating R.C. 3719.07 and Ohio Adm. Code 4729-9-14 by failing to keep a record of all controlled substances received or dispensed by Linden, i.e., that Linden and/or its employees sold the controlled substances listed in paragraphs two and three of the Notice of Opportunity, but failed to keep a record of such sales. R.C. 3719.07 provides, in pertinent part:
 (B)(3) Every category III terminal distributor of dangerous drugs shall keep records of all controlled substances received or sold. The records shall be kept in accordance with division (C)(3) of this section.
* * *
 (C)(3) The records required by division (B)(3) and (4) of this section shall contain the following:
 (a) The description of controlled substances received, the name and address of the person from whom controlled substances are received, and the date of receipt;
 (b) The name and place of residence of each person to whom controlled substances, including those otherwise exempted by section 3719.15 of the Revised Code, are sold, the description of the controlled substances sold to each person, and the date the controlled substances are sold to each person.
By its express terms, the record-keeping requirements set forth in R.C. 3719.07 apply only to records of the receipt or sale of controlled substances.
Similarly, Ohio Adm. Code 4729-9-14(A) provides, in relevant part:
 Each prescriber or terminal distributor of dangerous drugs shall keep a record of all controlled substances received, administered, dispensed, sold or used.
 (1) Records of receipt shall contain a description of all controlled substances received, the kind and quantity of controlled substances received, the name and address of the persons from whom received, and the date of receipt.
 (2) Records of administering, dispensing, or using controlled substances shall contain a description of the kind and quantity of the controlled substance administered, dispensed, or used, the date, the name and address of the person to whom, or for whose use, or the owner and species of the animal for which the controlled substance was administered, dispensed, or used.
Ohio Adm. Code 4729-9-14's express terms require record-keeping only with regard to controlled substances received, administered, dispensed, sold, or used by the pharmacy.
In affirming the board's order, the common pleas court found that Linden violated R.C. 3719.07 and Ohio Adm. Code 4729-9-14 by failing to maintain a record of the missing drugs. Specifically, the court found that the fact that neither R.C. 3719.07 nor Ohio Adm. Code 4729-9-14
included the word "stolen" did not absolve Linden of its duty to keep accurate records of the disposition of the drugs — by whatever means they left the pharmacy. Initially, we note that in so finding, the court improperly altered the board's allegation from a specific charge geared to the sale of the drugs, to a charge that Linden failed to track stolen controlled substances. In so doing, the court ignored the plain language set forth in paragraph four of the Notice of Opportunity, which does not mention failure to keep a record of stolen drugs as a basis for violating R.C. 3719.07 and/or Ohio Adm. Code 4729-9-14.
Moreover, the court's decision impermissibly expands the scope of both the statute and the rule. This court has stated that "`[c]ourts must give effect to the words explicitly used in a statute or rule rather than deleting words used, or inserting words not used, in order to interpret an unambiguous statute or rule.'" Harding v. Conrad (1997),121 Ohio App.3d 598, 601, quoting State v. Wemer (1996),112 Ohio App.3d 100, 103. See, also, Clark v. State Bd. of Registration for Professional Engineers Surveyors (1997), 121 Ohio App.3d 278, 284
(interpretation of statutes and administrative rules should follow the principle that neither are to "be enlarged or construed in any way other than that which [their] words demand"). According to the common pleas court, "[h]ad proper records and inventory been kept * * * Linden would have discovered the theft much sooner." (5/19/00 Decision at 11.) However, both R.C. 3719.07 and Ohio Adm. Code 4729-9-14 are clear as to the types of records a pharmacy is required to keep. Nowhere in the plain language of either the statute or rule does the board require that a terminal distributor of dangerous drugs keep a record of controlled substances which have been stolen or otherwise misappropriated or lost from the pharmacy. Had the drafters of either the statute or rule intended to require a pharmacy to keep records of stolen or otherwise misappropriated drugs, the drafters would certainly have employed language to that effect.
Turning now to the plain language of R.C. 3719.07 and Ohio Adm. Code4729-9-14, we note that the board has not questioned whether the controlled substances were in fact "received" by Linden. Similarly, the board neither alleged nor found that Linden "administered" or otherwise "used" the controlled substances. The common pleas court found that the controlled substances had not been "dispensed" by Linden. Thus, the issue resolves to whether or not Linden can be found to have "sold" the drugs, and if so, whether Linden failed to keep adequate records of such "sales."
The term "sale," as defined in both R.C. 3719.01(AA) and 4729.01(J), includes delivery, barter, exchange, transfer, or gift, or offer thereof, by any person, including an owner, agent, or employee. Notably, this definition does not include "stolen." The board asserts, however, that one of Linden's employees "sold" the drugs by "transferring" them out of the pharmacy. According to its common definition, "transfer" means to "convey or remove from one place, person, etc., to another." Webster's Encyclopedic Unabridged Dictionary of the English Language (1996), Portland House, 1504. In order to prove that a "transfer" occurred, the board must identify: (1) who took the controlled substances; and (2) who received the controlled substances from the first person. The board's "transfer" argument fails because the board cannot identify either the transferor or the transferee. The board admits in its brief that it is without any evidence as to the identity of the perpetrator: "Though an investigation was conducted by the Board of Pharmacy and by the Columbus Police Department Narcotics Bureau, no individual could be identified as the party who removed this large quantity of drugs from [Linden's] premises." (Appellee's brief at 11.) In addition, the board admits that the controlled substances cannot be traced to any particular recipient: "There was no evidence or records of where the drugs went, only that they were missing. There were no break-ins at the pharmacy during this time. The records clearly indicated that Linden received the drugs, but there is no record of where the drugs went." Id. at 9-10. Finally, the board offers no explanation as to how a theft of controlled substances by an unknown perpetrator qualifies as a "transfer" by a Linden employee for purposes of R.C. Chapters 3719 and 4729 or Ohio Adm. Code Chapter 4729. Accordingly, we do not agree with the board's contention that one of Linden's employees "transferred" and thus "sold" the missing drugs, as that term is defined in R.C. Chapters 3719 and 4729.
Accordingly, because the evidence of record does not support the violation charged in paragraph four of the Notice of Opportunity, we find that the common pleas court abused its discretion in affirming that portion of the board's order.
We turn next to Linden's contention that the common pleas court erred in affirming the board's order with regard to findings of fact five and six. As noted previously, paragraphs five and six of the Notice of Opportunity allege that Linden:
 (5) * * * fail[ed] to provide effective and approved controls and procedures to guard against theft and diversion of dangerous drugs, to wit: the pharmacy had inadequate supervision and control over the controlled substances so as to prevent, deter, or detect the diversion of the controlled substances noted in paragraphs (2) and (3) above * * * in violation of Rule 4729-9-05 of the Ohio Administrative Code * * *.
 (6) * * * fail[ed] to maintain the minimum standards for a pharmacy, to wit: the pharmacy did not possess a copy of current federal and state laws, regulations, and rules governing the legal distribution of drugs in Ohio * * * in violation of Rule 4729-9-02 of the Ohio Administrative Code * * *.
Ohio Adm. Code 4729-9-05 provides, in relevant part:
 All registrants shall provide effective and approved controls and procedures to deter and detect theft and diversion of dangerous drugs. In order to determine whether a registrant has provided effective and approved controls against diversion, the state board of pharmacy shall use the security requirements set forth in rule 4729-9-11 of the Administrative Code as standards for the security controls and operating procedures necessary to deter and detect diversion.
 Ohio Adm. Code 4729-9-02, entitled "Minimum standards for a pharmacy" provides, in part:
(A) Library
 (1) Current federal and state laws, regulations, and rules governing the legal distribution of drugs in Ohio[.]
Linden does not contend that it had adequate supervision and control over its dangerous drug supply so as to prevent, deter, or detect the diversion of the controlled substances at issue as required by Ohio Adm. Code 4729-9-05. Indeed, Linden admits that during the audit period over 80,000 doses of Schedule III and IV controlled substances were stolen or otherwise diverted from the pharmacy. Further, Linden admits that at the time of the audit, it did not possess a copy of the current federal and state drugs laws, regulations, and rules governing the legal distribution of drugs in Ohio as required by Ohio Adm. Code 4729-9-02. Linden contends, rather, that it should not be held responsible for the loss of the drugs or for its failure to comply with Ohio Adm. Code 4729-9-02
because it satisfied the standard of care set forth in R.C. 4729.27[5]
by hiring Broering to be in charge of supervising and managing the pharmacy and designating him as the "responsible pharmacist" on its terminal distributor license.
We cannot agree with Linden's contention that it should bear no responsibility for the loss of the drugs in the instant case. Although, as Linden argues, the "responsible pharmacist" is charged with providing "supervision and control" of dangerous drugs and "adequate safeguards" to assure that dangerous drugs are being distributed in accordance with state and federal law (see Ohio Adm. Code 4729-5-11 and 4729-9-11), Ohio Adm. Code 4729-9-05 places the ultimate responsibility upon the "registrant," i.e., Linden, to provide effective and approved controls and procedures to deter and detect theft and diversion of dangerous drugs. Clearly, that was not done. The evidence at the hearing establishes that Broering slept much of the time he was on duty; that the pharmacy technicians dispensed drugs and counseled patients; that packers were permitted unsupervised access to controlled substances; and that the pharmacy owner was rarely on the premises. The common pleas court found this evidence sufficient to establish a violation of Ohio Adm. Code4729-9-05, and we concur in the well-reasoned opinion of the common pleas court in that regard:
 [Linden] argues that Kaufman is being unduly penalized for the acts of his employees. Although Kaufman was not a direct participant in the day to day operation of the pharmacy, his lack of interest left unchecked the gross negligence of the responsible pharmacist and the technicians to whom the terminal distributor gave unbridled authority. He apparently never compared how many drugs were being purchased with how many were being lawfully dispensed because he apparently did not even suspect any theft, much less theft in this quantity. Additionally, the acts or omissions of his agents must be imputed to him for the safety and well-being of those who choose to have their prescriptions filled at this pharmacy. Licensees electing to operate a business through employees are responsible to the licensing authority for their conduct. Although a licensee may find his permit imperiled by a careless or unauthorized act of an employee, the validity of such regulation lies in the nature of the item being regulated. (citation omitted). * * * Clearly controlled substances must be subject to strict regulation. [5/19/00 decision, at 13.]
We also find Linden ultimately responsible for its failure to comply with the minimum standards for a pharmacy as required by Ohio Adm. Code4729-9-02. During closing argument at the board hearing, Linden's counsel admitted that Linden did not have a current copy of the federal and state drug laws, rules, and regulations in the pharmacy at the time of the audit. Counsel did not argue at the hearing that such failure was the fault of Broering. Indeed, no evidence suggests that Linden possessed a copy of the drug laws prior to Broering's being named "responsible pharmacist" in August 1995. Accordingly, we do not accept Linden's belated argument that Broering was responsible for Linden's failure to comply with Ohio Adm. Code 4729-9-02.
For all the foregoing reasons, we conclude that the common pleas court did not err in finding that substantial, reliable and probative evidence supported the board's order regarding the pharmacy supervision violations set forth in findings of fact five and six.[6]
Finally, Linden contends that the common pleas court abused its discretion in remanding the matter to the board. Linden argues that the court should have modified the penalty in accordance with its findings.
If a common pleas court, as a reviewing court, finds that not all of the violations found by an administrative agency are supported by the evidence, the court has discretion to affirm the penalty as reasonable, to modify the penalty to make it appropriate for the remaining violations, or to remand the matter to the agency to fashion a new penalty. Ohio Real Estate Comm. v. Aqua Sun Investments, Inc. (1995),101 Ohio App.3d 221, 226. This court's review of the common pleas court's action in the instant case is limited to an abuse of discretion standard. Id.
The common pleas court found that the portion of the board's order relating to Linden's alleged trafficking in controlled substances was not supported by the evidence. Accordingly, the court remanded the case to the board with instructions to determine whether revocation of Linden's terminal distributor license was appropriate in light of the court's finding. The court did not abuse its discretion in ordering such a remand.
Moreover, we note that "the duty with respect to the penalty is one peculiarly within the discretion of the trier of the facts." Id., quoting Gooding v. Hearing Aid Dealers Fitters Licensing Bd. (Jan. 26, 1983), Montgomery App. No. 7934, unreported. Accordingly, in light of our finding that the board's order relating to the drug trafficking and record keeping violations (findings of fact two, three and four) was not supported by the evidence, the matter must be remanded so that the board may fashion an appropriate penalty.
For the foregoing reasons, appellant's first, second, third and fifth assignments of error are sustained, and its fourth assignment of error is overruled. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
 ____________________ PETREE, J.
BOWMAN and TYACK, JJ., concur.
[1] The Notice of Opportunity was addressed to "Linden Medical Pharmacy, Inc. c/o Jerome C. Broering, R.Ph."
[2] "Terminal distributor of dangerous drugs" is defined in R.C.4729.01(Q) as: "a person who is engaged in the sale of dangerous drugs at retail, or any person, other than a wholesale distributor or a pharmacist, who has possession, custody, or control of dangerous drugs for any purpose other than for that person's own use and consumption, and includes pharmacies, hospitals, nursing homes, and laboratories and all other persons who procure dangerous drugs for sale or other distribution by or under the supervision of a pharmacist or licensed health professional authorized to prescribe drugs."
[3] Paragraph (1) of the Notice of Opportunity did not allege a violation against Linden. It reads: "Records of the Board of Pharmacy indicate that you (Jerome C. Broering, R.Ph.) are the Responsible Pharmacist at Linden Medical Pharmacy pursuant to Sections 4729.27 and4729.55 of the Ohio Revised Code and Rule 4729-5-11 of the Ohio Administrative Code."
[4] During the relevant time period, Broering was the "Responsible Person" listed on Linden's terminal distributor license.
[5] R.C. 4729.27 provides: "A person not a pharmacist, who owns, manages, or conducts a pharmacy, shall employ a pharmacist to be in full and actual charge of such pharmacy. Any pharmacist who owns, manages, or conducts a pharmacy shall be personally in full and actual charge of the pharmacy, or shall employ another pharmacist to be in full and actual charge of the pharmacy."
[6] Because reliable, probative and substantial evidence supports the board's finding with regard to the violations alleged in findings of fact five and six, the common pleas court's improper reliance on statutes and rules not alleged in the Notice of Opportunity is nonprejudicial.